THE LOWLANDS.

(District Court, E. D. South Carolina. January 17, 1906.)

SEAMEN—PERSONAL INJURIES—LIABILITY OF VESSEL.

Libelant, a seaman ordered, with others, to paint the funnel of the ship while she lay in port, ran the line used to raise and lower the boatswain's chair, in which he sat while doing the work, through an iron pulley, which was made fast to a ring at the top of the funnel; but, owing to the sheave having become rusty, the pulley would not turn, and he then ran the line through a wooden pulley, which hung beside the other and was attached to the top of the funnel by means of an iron hook and a short piece of rope. He testified that the rope looked to be safe and in good condition, but it broke and he fell to the deck and was injured. *Held*, that he was not chargeable with want of ordinary care, and that he was entitled to recover for the injury from the ship on the ground of its failure to furnish him with fit and safe appliances for the work.

In Admiralty. Suit by seaman to recover for personal injuries.

W. Turner Logan and Jno. P. Grace, for libelant.

Miller & Whaley and Convers & Kirlin, for respondent.

BRAWLEY, District Judge. This is a libel for damages for personal injuries received on the British steamship Lowlands, while she was moored at the dock in the city of Charleston, September 26, 1905. The libelant, an Austrian by birth, shipped on the British steamship above named in London, August 21st. He and another seaman were ordered to paint the funnel of the ship on the morning of September 26th. There were three iron pulleys with iron hooks attached to a ring around the top of the funnel—one on the port side, one on the starboard side, and one on the fore part of the funnel. The method by which the painting was to be accomplished was by rigging a gant line through the pulleys and the seamen were to sit in a boatswain's chair, and to be pulled up the funnel while doing their work. The libelant, whose duty it was to paint the starboard side of the funnel, put his line through the iron pulley and was drawn up to near the top of the funnel. He found the sheave of the pulley rusted so that it would not turn, and he could not lower himself as desired. He then put his line through a wooden pulley which lay alongside of the iron pulley on that side of the funnel. This wooden pulley was attached to the top of the funnel by an iron hook and a short piece of rope. Sitting in the boatswain's chair, he was pulled up to near the top of the funnel, and was about to commence painting, when the rope attaching the pulley to the funnel broke; the libelant falling to the deck, a distance of about 25 feet, receiving the injuries complained of.

For what purpose the wooden pulley was on the funnel is not clear. Some of the officers of the ship say that it was for a line the other end of which was attached to the mast and to hold a wind sail, which went down into the engine room; but the testimony makes it clear that it was not used for this purpose during the voyage when the libelant was on the ship, and libelant's testimony is that the line holding the wind sail during such voyage was attached to the funnel by

an iron hook. It appears from the testimony that two wooden pulleys, one for the starboard and one for the port side, were rigged up after the accident, and used for the completion of the painting, and it is not unlikely that the wooden pulley which gave way had originally been put up on the funnel for some such purpose and left there, and it does not appear that it had been used for any purpose whatsoever during the voyage from London to this port. The libelant testifies that he examined it before he put his line through it, and that the rope seemed to be yellow and in good order. Libelant's testimony was not taken until after the conclusion of the testimony for the claimant, which was taken in New York, and there is no testimony in reply to it. The wooden pulley was not offered in evidence. The probability is that, lying against or near the hot funnel during the voyage, its strength was impaired by the heat; but there is no testimony in contradiction of the libelant that it was apparently strong enough to bear his weight, and that it did not have any outward indication of being burnt. The failure to offer it in evidence, and the omission to offer any testimony concerning it naturally gives rise to inferences against the claimant and compels belief in the libelant's testimony that it was apparently fit to be used for the purpose for which he used it. The iron pulley was taken down after the accident, overhauled, and oiled, and was offered in evidence, and is before me. It is in good condition, and, although the libelant testifies that it was rusted and unfit, the probability is that the only defect at the time was due to the exposure and rust, which prevented the sheave from turning. It is clear from libelant's testimony that he regarded the iron pulley as the one to be used, and that was the one selected by him when he began his work; and it was only when he found that the sheave would not turn and that he could not lower himself at will that he put his line through the wooden pulley.

That it is a master's duty on land and on sea to exercise ordinary and reasonable care, having regard to the hazards of the service, to provide his employés with reasonably safe appliances, machinery, tools, and working places, and to exercise ordinary and reasonable care to keep them in a reasonably safe condition of repair, is undisputed; and where there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes the risk of the injury which its use entails, and a servant who fails to exercise ordinary care, and chooses a more dangerous method, when there was a safer one at his command, is not entitled to compensation for the injuries due to the omission to exercise that degree of care which a reasonably prudent person would employ in like circumstances to protect himself from injury. The case turns upon a very narrow point. The iron pulley was undoubtedly a safe appliance, and from libelant's own testimony it is clear that he knew that it was there for the work which he was ordered to do; for he rigged his line through it when he went up on the funnel, and it was only when he discovered that he could not lower himself because the sheave was rusted that he turned to the other appliance,

which seemed to him also to be fit. The highest degree of care and prudence might seem to require that he should inform the boatswain that the pulley would not work, and await its being put in proper condition; for there was no emergency, such as arises at sea, where to avoid imminent danger the sailor may take risks which in a calmer time would be reckless and imprudent. But the law does not require of a seaman the exercise of the highest degree of care and prudence. The conditions of his employment are such that no more than ordinary care can be required of him. His contract of service is in most respects governed by the law which regulates the duties of master and servant generally, but in some respects it is peculiar. Deep reasons of policy and necessity give it an exceptional character. He is not like a landsman, who may quit his work, and must surrender in large degree his personal liberty and freedom of action. Prompt obedience is always required of him, and he will not be heard to make much objection to the appliances furnished for the work which he is commanded to do. When, therefore, he was ordered to paint this funnel, and found there two pulleys alongside of each other, and made choice first of that which seemed safer, and upon its failure to work had recourse to another appliance apparently safe and fit for the work which he was commanded to do, I cannot hold that he has been guilty of such negligence as to disable him from recovery. The negligence imputable to the ship was but slight, and precludes anything beyond compensation.

After the accident everything proper to be done was done to mitigate its effects. A physician was promptly summoned, and every proper attention was given him. He was taken to the hospital and received all proper treatment. He complained of pain in his back and in his wrist. No permanent injury to the back has developed. On October 2d the surgeon at the hospital reported that his injuries consisted of a sprain of the muscles of the back and the wrist of the left arm; that the examination had revealed no broken bones; that his temperature and pulse had been normal throughout; that on October 4th the same surgeon made another report substantially the same, adding that his general condition was good, except some muscular pains in the back and arm, and that in his opinion he was well enough to leave the hospital; that he hardly thought he could resume hard work yet on account of muscular soreness. On that day he went to the British consular office to receive his pay, which the master of the ship left with the consul; the ship having left the port. The physician employed by the ship has testified that he did not think he had any permanent injury. Libelant has been able to walk about the streets, but has remained at the hospital, because it appears that under the regulations of the British government his board could only be paid while in the hospital. The injury to the wrist does not seem to have disappeared as rapidly as the surgeon in charge thought at the time he gave the certificates referred to; and, inasmuch as libelant still complained of it, he has received treatment more or less up to the time of the hearing, and a few days before the hearing the hand and wrist were examined under the X-rays, which disclosed appar-

ently that one of the small bones at the junction of the hand and wrist, called the scaphoid bone, was apparently fractured.

There is no testimony which satisfies me that he has received permanent injuries. He was receiving £4 6s. a month as wages. I am of opinion that the sum of $500, in the circumstances, would be proper compensation, and a decree for that amount, with costs, may be entered.